## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Samuel Jonathan ANTHONY Jr.,

~~—4409 Kanas Avenue, NW Washington, DC 2001)~~ *(handwritten)*

       Petitioner,

-against-

William P. BARR, Attorney General of the United States; Kevin K. MCALEENAN, Acting Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY,

      Respondents.

*(handwritten)* 950 Penn. Ave. NW Washington, DC 20530

*(handwritten)* 2707 Martin Luther King Jn. Ave. SE Washington, DC 20528-0525

Case: 1:19−cv−02441      JURY DEMAND
Assigned To : Friedrich, Dabney L.
Assign. Date : 8/12/2019
Description: TRO/Prelim. Injunct. (D−DECK)

**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS & COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**ORAL ARGUMENT REQUESTED**

### INTRODUCTION

1.    Petitioner, Samuel Jonathan Anthony Jr. ("Petitioner" or "Mr. Anthony") is a 38-year resident of the United States scheduled for immininet removal despite having pending claims to legal relief.

2.    Mr. Anthony has a pending application for a U nonimmigrant visa ("U Visa"), a form of status made available to certain crime victims.  To prevent his imminent deportation, Mr. Anthony concurrently files an emergency motion for a hearing and stay of removal and temporary restraining order.

3.    This case is therefore not about Respondents, Immigration and Customs Enforcement ("ICE") enforcing the law, but about ICE violating the law by targeting Mr. Anthony for detention and deportation, in violation of his constitutional, statutory, and regulatory rights.  Mr.

Anthony availed himself to a process that is intended to protect victims of crime and Respondents rushed efforts to deport him without any process is a violation of his constitutional, statutory and regulatory rights.

4.      Mr. Anthony brings this Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief ("Petition") pursuant to 28 U.S.C. § 2241; the All Writs Act, 28 U.S.C. § 1651; the Immigration and Nationality Act ("INA") and regulations thereunder; the Administrative Procedure Act ("APA"), 5 U.S.C § 701, and Article I, Section 9, Clause 2 of the United States Constitution (Suspension Clause), and the Fifth Amendment of the United States Constitution. Petitioner's current arrest and detention – and the rushed efforts to remove him – constitutes a "severe restraint" on his individual liberty such that Petitioner is "in custody" of the Respondents in violation of the . . . laws of the United States. *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973); 28 U.S.C. § 2241.  Petitioner seeks a stay of removal, and other relief as described herein.

## PRELIMINARY STATEMENT

5.      Mr. Anthony  was born on July 20, 1972 in Sierre Leone.  He has lived in the United States since the age of 9.   Mr. Anthony has strong equities in the United States.  He has been living here since September 8, 1981, for on or about the last 38 years.  He originally came to the US lawfully under F-2 status and adjusted his status to that of a lawful permanent resident on September 3, 1989.  Mr. Anthony was only 9 years old when he arrived and all of his formative years have been in the United States, the only country he really knows.  He is now 47 years old.

6.      Mr. Anthony is a father of a US-born daughter, son of naturalized parents, amd a sibling of US citizen sister and brother, and an active member of his community.

7.      Mr. Anthony was placed in immigration removal proceedings in 2010.  On May 26, 2011, an Immigration Judge, granted Mr. Anthony deferral of removal under the Convention Against Torture ("CAT") based on his fear of being tortured if forced to return to Sierra Leone. The government appealed the decision of the Immigration Judge to the Board of Immgiration Appeals ("Board" or "BIA") and the Board-while finding that Mr. Anthony was credible-reversed the decision of the Immigration Judge on November 17, 2011.

8.      On May 17, 2012, Respondents, ICE, granted Mr. Anthony an Order of Supervision ("OSUP") and released him from detention.  Since May 17, 2012, Mr. Anthony has fully complied with the terms of the OSUP.  *See* Exh. 1, OSUP.

9.      Mr. Anthony was the victim of a crime, a violent assault, that left him unconscious after he was assaulted by several men in Washington DC, while he was intervening to protect a woman those men were harassing.  He was taken to Hospital Washington Center, where he remained for approximately three days, having sustained injuries to his face, head, chest, ribs, and liver.  This violent assault has left deep emotional scars, leading Mr. Anthony to be diagnosed with post-traumatic stress disorder as a direct result of the crime he was a victim of. A psychological report is hereby included.  *See* Exh. 2, U Visa Application.

10.     On April 19, 2019, Mr. Anthony filed a U Visa Application with the United States Citizenship and Immigration Services ("USCIS").  On May 30, 2019, USCIS completed biometrics.  The U Visa application remains pending.

11.     On ~~August 6~~ July 31, 2019, without notice or warning or an opportunity to defend, Mr. Anthony was detained by ICE at a regularly scheduled check-in appointment with ICE.  Mr. Anthony is scheduled to be deported on August 13, 2019.

12.     Since the grant of an OSUP by ICE,  Mr. Anthony has kept gainful employment and has dutifully filed his income tax returns on a yearly and timely basis.  He has purchased a townhouse in Washingon, D.C..  He has continued to better himself by taking courses and have obtained certificates in carpentry, air sealing, weatherization tactics, office track programs, and PC.  He has used those skills to help people in the community on a voluntary basis when in needs of these services.  Mr. Anthony has founded an organization called "Mentoring 2 Work," that targets DC's youth, age 17 to 26, that is in need of mentoring.  Mr. Anthony's focus is to concentrate on this at-risk youth, addressing their emotional needs and pairing them with therapists.  The organization also pairs individuals with trainers and mentors to learn productive trade.  Mr. Antony is a member of the St Luke's Episcopal Church, which he regularly attends with his parents. *See* Exh. 3, Stay Request Submitted to ICE.

13.     Despite requests by Mr. Anthony's counsel, and customary practice, U.S. Immigration and Customs Enforcement have refused to provide Petitioner's counsel with documentation of the revocation of Mr. Anthony's release.  *See* Exh. 4, (ICE Communications).

14.     Mr. Anthony requests this Court grant him a temporary stay of removal as he exhausts the lawful processes made available to individuals in his position to seek immigration relief.

## JURISDICTION AND VENUE

15.     This case arises under 28 U.S.C. § 1331 (federal question jurisdiction with a waiver of sovereign immunity pursuant to the Administrative Procedure Act, 5 U.S.C. §701 et seq.); and 28 U.S.C. § 1346 (United States as defendant). Jurisdiction lies to grant declaratory relief pursuant to 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act).

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because the defendant federal agencies are headquartered in this District.

17.     Venue is not controlled by the immediate custodian rule, and the Petitioner's non-core

habeas claims are all properly brought in this District.

## PARTIES

18.     Petitioner Anthony is a long-time U.S. resident who feared return to Sierra Leone and has

a pending U vias application.

19.     Respondent William P. Barr is the Attorney General of the United States and the head of

the United States Department of Justice ("DOJ"). The DOJ is the federal agency responsible for

the administration and enforcement of the immigration laws, and for advising the relevant federal

Departments and agencies of their duties under the law. He is sued in his official capacity, and is

the immediate and legal custodian of Petitioner.   Respondent Barr's address is U.S. Department

of Justice, 950 Pennsylvania Avenue, N.W., Washington, District of Columbia 20530.

20.     Respondent Kevin K. McAleenan is the Acting Secretary of the Department of Homeland

Security ("DHS"), the Department of the Executive Branch of the United States government that

oversees the agencies responsible for enforcing the immigration laws of the United States.

Defendant McAleenan is the head of DHS and has ultimate responsibility for the administration

and enforcement of the immigration laws by DHS agencies. In that capacity, Defendant

McAleenan has direct authority over all policies, procedures and practices relating to the

apprehension of immigrant children at the United States border and the decisions by DHS to

designate children as "unaccompanied." He is sued in his official capacity, and is the immediate

and legal custodian of Petitioner.  Respondent McAleenan address is U.S. Department of

Homeland Security, 800 K Street, N.W. #1000, Washington, District of Columbia 20528.

21.     Respondent U.S. Department of Homeland Security ("DHS") is the federal agency

responsible for enforcing Petitioner continued detention and his removal proceedings. DHS's

address is U.S. Department of Homeland Security, 800 K Street, N.W. #1000, Washington, District of Columbia 20528.

## STATEMENT OF FACTS

22.     Mr. Anthony was born on July 20, 1972 in Sierre Leone but has called he United States home since the age of 9 years old. He has not returned to Sierre Leone since the age of 9 and his entire family resides in the United States.   *See* Exh. 3, Stay Request Submitted to ICE.

23.     Mr. Anthony has a US citizen daughter and has contributed to her university studies. Both of his parents are US citizens, as well as his two siblings, Samilia Anthony and Shanel Anthony. Mr. Anthony's entire family resides in Washington DC, near each other.   *See id.* and Exh. 2, U Visa Application.

24.     Mr. Anthony was placed in removal proceedings in 2010 and on May 26, 2011, an Immigraion Judge granted him deferral of removal CAT.   The government appealed the decision of the Immigration Judge to the Board-while finding that Mr. Anthony was credible-reversed the decision of the Immigration Judge.   *See id.*

25.     On May 17, 2012, Respondents, ICE, granted Mr. Anthony an OSUP and released him from detention.   Since May 17, 2012, Mr. Anthony has been fully complied with the terms of the OSUP.   *See* Exh. 1, OSUP.

26.     Mr. Anthony has been under an order of supervision since that time.   He has fully rehabilitated himself since his 1995 offense that occurred more than 24 years ago, when he was at the young age of 23 (he is now 47 years old).   Mr. Anthony has kept gainful employment and has dutifully filed his income tax returns on a yearly and timely basis.   He has purchased a townhouse in DC.   He has continued to better himself by taking courses and have obtained certificates in carpentry, air sealing, weatherization tactics, office track programs, and PC.   He

has used those skills to help people in the community on a voluntary basis when in needs of these services.  Mr. Anthony has founded an organization called "Mentoring 2 Work," that targets DC's youth, age 17 to 26, that is in need of mentoring.  Mr. Anthony's focus is to concentrate on this at-risk youth, addressing their emotional needs and pairing them with therapists.  The organization also pairs individuals with trainers and mentors to learn productive trade.  Mr. Antony is a member of the St Luke's Episcopal Church, which he regularly attends with his parents.  *See* Exh. 3, Stay Request Submitted to ICE.

27.     Mr. Anthony was the victim of a crime, a violent assault, that left him unconscious after he was assaulted by several men in Washington DC, while he was intervening to protect a woman those men were harassing.  He was taken to Hospital Washington Center, where he remained for approximately three days, having sustained injuries to his face, head, chest, ribs, and liver.  This violent assault has left deep emotional scars, leading Mr. Anthony to be diagnosed with post-traumatic stress disorder as a direct result of the crime he was a victim of. *See id.*

28.     On April 19, 2019, Mr. Anthony filed a U Visa Application with the United States Citizenship and Immigration Services ("USCIS").   On May 30, 2019, USCIS completed biometrics.   The U Visa application remains pending.   *See* Exh. 2, U Visa Application.

29.     The  U status application documents Mr. Anthony's family and community ties to the United States and long-time rehabilitation.  The supporting evidence demonstrates that Mr. Anthony deserves a positive exercise of discretion in the stay request and that he has the strong potential of relief in the form of a U status. *See id.*

30.     On July 31, 2019, without notice or warning or an opportunity to defend, Mr. Anthony

was detained by ICE at a regularly scheduled check-in appointment with ICE.   Mr. Anthony is

scheduled to be deported on August 13, 2019.

31.     Despite requests by Mr. Anthony's counsel, and customary practice, U.S. Immigration

and Customs Enforcement have refused to provide Petitioner's counsel with documentation of

the revocation of Mr. Anthony's release.

## LEGAL FRAMEWORK

32.     The power of ICE to arrest, detain and deport immigrants is not without limitations. To

the contrary, the power of ICE to act is delineated by a specific set of statutes and federal

regulations, and subject to the limitations of the U.S. Constitution.

33.     An individual who has been permitted to live and work in the U.S. on an order of

supervision following a past deportation order is protected by Constitutional, statutory, and

regulatory rights.

34.     Under the Fifth Amendment, ICE cannot deprive an immigrant of notice and an

opportunity to be heard on a pending visa application or other form of relief from deportation,

nor can ICE detain an immigrant who is not a flight risk or danger.

35.     In this case, several statutes and federal regulations provide government agencies with

the power to act and provide important restraints. The INA and implementing regulations both

authorize and place important limits on some acts of detention and deportation. Moreover, those

provisions must be read harmoniously with the APA.

36.     The Trafficking Victims Protection Act demonstrates Congress's intent to protect victims

of crime by providing them status in the U.S. and preventing ICE from deporting them pending

the investigation of a bona fide claim.

37.     The APA prevents arbitrary agency action. Federal regulations ensure that immigrants

with pending U visa applications are not summarily deported.

*Due Process, Statutory, and Regulatory Rights to an Adjudication of his U Visa Application*

38.     The U Visa reflects lawmakers' recognition that a crime victim's cooperation, assistance,

and safety are essential to the effective detection, investigation, and prosecution of crimes.

Pursuant to 8 U.S.C. § 1184(p)(2), only 10,000 U Visas are issued to crime victims per fiscal

year. *See* 8 C.F.R. § 214.14(d)(1). Crime victims who are eligible for a U Visa, but are not

granted the status because of the cap, are placed on a waiting list. 8 C.F.R. § 214.14(d)(2).

39.     Those on the waiting list and their qualifying family members are granted deferred

action—a decision to stay their deportation as an act of prosecutorial discretion—while their

petitions are pending. *Id.* USCIS may also grant these individuals and their qualifying family

members work authorization. *Id.* While an applicant for a U visa may still pursue his or her U

visa as a whole even if deported, "deferred action" and the rights it entails are no longer

available.

40.     Immigrants who pursue lawful immigrant status in the United States have rights under

the Due Process Clause of the Fifth Amendment. The fundamental requirement of Due Process is

the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v.*

*Elridge*, 424 U.S. 319, 332 (1976). Procedural due process "imposes constraints on government

decisions which deprive individuals of "liberty" or "property" interests within the meaning of the

Due Process Clause of the Fifth or Fourteenth amendment." *Id.* Once a petitioner has identified

protected liberty or property interest, the Court must determine whether constitutionally

sufficient process has been provided. *Id.* In making this determination, the Court balances (1)

"the private interest that will be affected by the official action"; (2) "the risk of an erroneous

deprivation of such interest through the procedures used, and the probable value, if any, of

additional or substitute procedural requirement would entail;" and (3) "the government's interest,

including the function involved and the fiscal and administrative burdens that the additional or

substitute procedural requirement would entail." *Id.* at 335.

41.     Due process cases recognize a broad liberty interest rooted in both the fact of deportation

and the process of removal proceedings. *See Bridges v. Wixon*, 326 U.S. 135, 154 (1945)

(deportation "visits a great hardship on the individual and deprives him of the right to stay and

live and work in this land of freedom."); *see also Chhoeun v. Marin*, 2018 WL 566821, at *9

(C.D. Cal., Jan. 25, 2018) (finding a "strong liberty interest" where being deported means being

separated from home and family).

42.     While this liberty interest typically arises in removal  proceedings, courts have found

procedural due process violations for persons not in removal proceedings. *See, e.g., Walters v.

Reno*, 145 F.3d 1032 (9th Cir. 1998) (forms issued to noncitizens charged with civil document

fraud violated due process clause); *Rojas v. Johnson*, 305 F.Supp.3d 1176, 1180 (W.D. Wash.

Mar. 29, 2018) (concluding that "Agency Defendants do not provide sufficient notice of the one-

year deadline to satisfy the Due Process clause" to asylum-seeker subclasses both in and out of

removal proceedings).

43.     Mr. Anthony is entitled to due process because he filed an I-918 Application for U

Nonimmigrant Status. Mr. Anthony has a liberty interest and property at stake under the statute.

Although deportation does not prevent an applicant from ultimately receiving a U visa, it does

prevent an applicant from receiving "deferred action" status pending their U visa—a status

designed specifically to prevent deportation. 8 C.F.R. § 214.14(d)(2). If granted deferred action

pending his U visa adjudication, Mr. Anthony would be able to remain in the U.S.  Yet ICE is

attempting to shortchange this process by deporting Mr. Anthony before making any of these determinations.

44.     Interpreted in light of the Constitution, the INA and its applicable regulations do not permit potential deportation while an individual is engaged in the process of attempting to regularize his immigration status through U visa applications. The INA seeks to protect individuals who live in the United States unlawfully, are under final orders and removal, and are victims of crime.

45.     Due process protects a noncitizen's liberty interest in the adjudication of discretionary applications for relief and benefits made available under the immigration laws. *See Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (recognizing protected interests in the "right to seek relief" even when there is no "right to the relief itself"). Mr. Anthony has a protected due process interest in his ability to have his U visa status adjudicated.

46.     The APA forbids agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A court reviewing agency action "must assess . . . whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment"; it must "examin[e] the reasons for agency decisions—or, as the case may be, the absence of such reasons." *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (quotations omitted).

## CLAIMS FOR RELIEF

### COUNT I: PLAINTIFF-PETITIONER'S REMOVAL PRIOR TO ADJUDICATION OF U NONIMMIGRANT STATUS APPLICATION VIOLATES PROCEDURAL DUE PROCESS UNDER THE U.S. CONSTITUTION

47.     Petitioner re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

11

48.     Due process protects a noncitizen's liberty and property interest in the adjudication of applications for relief and benefits made available under the immigration laws. *See Arevalo v. Ashcroft*, 344 F.3d 1, 15 (1st Cir. 2003) (recognizing protected interests in the "right to seek relief" even when there is no "right to the relief itself").

49.     Petitioner has a protected procedural due process interest in his ability to remain

50.     eligible for "deferred action" pursuant to U visa status, and to reopen his removal proceedings. Due process challenges are evaluated under the *Mathews* balancing test. *See Mathews,* 424 U.S. at 335.

51.     Respondent's removal of Petitioner prior to the consideration of "deferred action" through Petitioner's U visa application violates due process.  *See S.N.C. v. Sessions*, No. 18 CIV. 7680 (LGS), 2018 WL 6175902, (S.D.N.Y. Nov. 26, 2018); *Bangally Fatty v. Nielsen*, 2018 WL 3491278 (W.D. Wash. July 20, 2018) (holding that a detained non-citizen victim of human trafficking with a pending application for T Nonimmigrant Status satisfied the Elridge Test).

52.     First, Mr. Anthony has a vested liberty interest in preventing his removal. Courts have long recognized that removal implicates substantial liberty interests, such that 'the Due Process Clause protects an alien subject to a final order of deportation." *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001); *see also Wong Wing v. United States*, 163 U.S. 228, 238 (1896).

53.     If Mr. Anthony is removed before his application for U visa status is adjudicated or his removal case is reopened, he will be deprived of access to "deferred action." If granted "deferred action," Mr. Anthony will be allowed to remain and work in the country and await a U visa (along with other relief). 8 C.F.R. § 214.14(d)(2). Deferred action is designed to prevent removal and is thus unavailable if he is deported.

54.     Mr. Anthony's liberty and property interests outweigh any government interest in his deportation. Any efforts by ICE to remove Petitioner, without allowing him to avail himself of the procedures created by the INA and its regulations, and without providing any meaningful process at a meaningful time, violate and would violate procedural due process in the Constitution.

## COUNT II: REMOVAL OF PETITIONER VIOLATES THE INA, REGULATIONS THEREUNDER, AND DUE PROCESS BECAUSE HE HAS BEEN RELEASED ON A VALID ORDER OF SUPERVISION

55.     Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

56.     Respondents' presumed basis for re-detaining Mr. Anthony is 8 U.S.C. § 1231, the statute governing detention following a final order of removal ("post-order detention").

57.     Under the terms of this statute and the governing regulations, Mr. Anthony's detention is unlawful.  8 U.S.C. § 1231 authorizes the detention of individuals following a final order of removal only under specifically delineated circumstances. The third subclause of 8 U.S.C. § 1231(a)(3) provides that an individual who is not removed within a 90-day statutory removal period "shall be subject to supervision" (emphasis added) under specific terms, including requirements that he or she appear periodically before an immigration officer and obey any written restrictions. *See also* 8 C.F.R. § 241.5 (specific conditions for release—involving but not limited to reporting requirements and travel document acquisition requirements—should an order of supervision be issued).

58.     Furthermore, 8 U.S.C. § 1231(a)(7) provides that work authorization can be issued when the removal of an individual is impossible as a result of travel document related issues or "otherwise impracticable or contrary to the public interest." *See also* 8 C.F.R. §§ 241.5(c); 274a.12(c)(18).

59.     The 90-day statutory removal period in Mr. Anthony's case ran from on or about November 17, 2011, the date upon which the removal order became final.

60.     Mr. Anthony was released on an order of supervision ("OSUP") on May 17, 2012.

61.     To the extent that the Government has revoked Mr. Anthony's OSUP without notice or an opportunity to be heard, the Government has violated the statute and the applicable regulations –8 C.F.R. §§ 241.4(l) and 241.13(i) – by failing to provide Mr. Anthony with a particularized notice of the reason(s) of the revocation of his release or an opportunity to respond to the allegations contained therein.

62.     When the Government fails to comply with its own federal regulations, as it did when it revoked Mr. Anthony's release in violation of its own procedures, the action should be found invalid. *See e.g., Ying Fong v. Ashcroft*, 317 F. Supp. 2d 398, 403-04 (S.D.N.Y. 2004) (granting habeas petition where Petitioner was deported fewer than seventy-two hours after her arrest and regulation mandated a seventy-two-hour rule); *see also Rombot v. Souza*, 296 F.Supp. 3d 383, 388-389 (D. Mass. Nov. 8, 2017).

63.     Moreover, under the APA, a "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. The reviewing Court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be—. . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. §§ 706(2)(A), (E).

64.     The decision to detain Mr. Anthony, who had previously been released on an order of supervision, and neither violated nor failed to comply with the conditions thereto for over seven years until his re-detention on July 31, 2019, must be reviewed by this Court and found to be "arbitrary, capricious, an abuse of discretion and not in accordance with the law." 5 U.S.C. §§

706(2)(A), (E). Absent this Court's intervention, Mr. Anthony does not have any "remedy" to challenge the decision of the Respondents.

65.     The INA specifies circumstances upon which a person may be released from custody, and it does not provide for re-detention except impliedly for a violation of those terms. The relevant regulatory framework (8 C.F.R. §§ 241.4(l) and 241.13(i)) authorizes revocation of an individual's release on an order of supervision only in certain contexts.

66.     8 C.F.R. §241.4(l) specifies revocation may occur upon violation of the conditions of release or when, in the district director's opinion, revocation is in the public interest because one of four conditions is met: "(1) the purposes of release have been served; (2) the alien violates any condition of release; (3) it is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (4) the conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2). Section 241.13(i) provides further conditions where release decisions may be revoked, only for the purpose of removal. Notably, several of these provisions are found only in the regulations and not the statute and are ultra-vires, but even to the extent they apply, Respondents have failed to comply with the process.

67.     Under 8 C.F.R. § 241.13(i), Mr. Anthony has, at minimum, a regulatory right to a detailed explanation for the reasons of revocation as well as an interview to contest the basis for the revocation.

68.     Upon information and belief, Mr. Anthony has been provided with *neither* proper notice *nor* an opportunity for an interview, and certainly not one where counsel was informed or could be present. Nor are these minimum regulatory requirements legally sufficient, in that these paper hearings go before the same immigration officials that decided to detain him in the first place—

making them both judge and jailer. Nonetheless, at minimum, "ICE has the duty to follow its own federal regulations." *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003) (quoting *Nelson v. I.N.S.*, 232 F.3d 258, 262 (1st Cir. 2000)). It has failed to do so here.

69.     In addition, the Government's actions have also deprived Mr. Anthony of due process of law. Procedural due process constrains governmental decisions that deprive individuals of property or liberty interests within the meaning of the Due Process Clause of the Fifth Amendment. *See Matthews v. Eldridge*, 424 U.S. at 332; *see also Perry v. Sindermann*, 408 U.S. at 601-03 (1972) (reliance on informal policies and practices may establish a legitimate claim of entitlement to a constitutionally-protected interest). Infringing upon a protected interest triggers a right to a hearing before that right is deprived. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70 (1972).

70.     Mr. Anthony's Order of Supervision creates legitimate liberty and property interests.

71.     First, Mr. Anthony has a liberty interest in his freedom from physical confinement, which his order of supervision and stay of removal help to secure. *See Zadvydas v. Davis*, 533 U.S. at

72.     Second, Mr. Anthony also has a property interest in his Order of Supervision. Property interests "are created and their dimensions are defined by existing rules or understandings that . . . secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. at 577.

73.     Mr. Anthony has complied with the terms of his order of supervision since May 17, 2012.

74.     To the extent that the Government revoked Mr. Anthony's Order of Supervision without prior notice or opportunity to be heard, the Government has acted in violation of statute, regulations, and the U.S. Constitution.

## PRAYER FOR RELIEF

**WHEREFORE,** Petitioner request that the Court grant the following relief:

A.    Assume jurisdiction over this matter;

B.    Temporarily stay Mr. Anthony's removal or transfer outside the jurisdiction of this Court

and the United States pending its adjudication of this Petition;

C.    Declare that any deportation of Mr. Anthony prior to the full adjudication of his

application for a U visa would violate the Due Process Clause of the Fifth Amendment,

the INA, APA, and federal regulations;

D.    Order a stay of removal until Mr. Anthony's applications for a U visa is fully adjudicated,

including all administrative appeals;

E.    Award Plaintiff-Petitioner costs and reasonable attorneys' fees; and

F.    Order such other relief as this Court may deem just and proper.

12th day of August, 2019.

Respectfully Submitted,

By:_____

Kevin J. McCants (493979)
601 Pennsylvania Avenue, NW
Suite 900
Washington, DC 20004
202.316.4966
202.330.5155 (fax)
kevin@themccantsfirm.com

*Gregory P. Copeland (Ny Bar No. 4806485)
*Sarah T. Gillman (NY Bar No. 3986197)
RAPID DEFENSE NETWORK

11 Broadway Ste 615
New York, NY 10004-1490
Phone (212) 843-0910
Fax: (212) 257-7033
E-mail: gregory@nscdefense.org
E-mail: sarah@nscdefense.org


ATTORNEYS FOR THE PETITIONER
*Motions pro hac vice forthcoming*

## VERIFICATION PURSUANT TO 28 U.S.C. §2242

I am submitting this verification on behalf of the Petitioner because I am one of the Petitioner's

attorneys. I have discussed with the Petitioner the events described in this Petition. On the basis

of those discussions, I hereby verify that the statements made in the attached Petition are true and

correct to the best of my knowledge.

Date: August 12, 2019

By: _____
Kevin J. McCants