```
 1              BEFORE THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3    SAMUEL JONATHAN ANTHONY, JR.,      .
                                         .  Case Number 19-CV-2441
 4            Petitioner,                .
                                         .
 5        vs.                            .  Washington, D.C.
                                         .  September 11, 2019
 6    WILLIAM P. BARR, et al.,           .  3:05 p.m.
                                         .
 7            Respondents.               .
      - - - - - - - - - - - - - - - - -

 8

 9        TRANSCRIPT OF TELEPHONIC PRELIMINARY INJUNCTION HEARING
                 BEFORE THE HONORABLE DABNEY FRIEDRICH
10                   UNITED STATES DISTRICT JUDGE

11

12    APPEARANCES:

13    For the Petitioner:         GREGORY COPELAND, ESQ.
                                  Rapid Defense Network
14                                11 Broadway, Suite 615
                                  New York, New York 10004
15

16    For the Respondents:        PATRICIA MC BRIDE, ESQ.
                                  United States Attorney's Office
17                                555 Fourth Street Northwest
                                  Washington, D.C. 20530
18

19

20

21    Official Court Reporter:    SARA A. WICK, RPR, CRR
                                  333 Constitution Avenue Northwest
22                                U.S. Courthouse, Room 4704-B
                                  Washington, D.C. 20001
23                                202-354-3284

24
      Proceedings recorded by stenotype shorthand.
25    Transcript produced by computer-aided transcription.
```

```
 1                      P R O C E E D I N G S
 2              THE COURTROOM DEPUTY:  Good afternoon, Your Honor.
 3   This is Civil Case year 2019-2441, Samuel Jonathan Anthony
 4   versus William P. Barr, et al.
 5       Counsel, please introduce yourselves for the record,
 6   beginning with the plaintiff.
 7              MR. COPELAND:  Good afternoon, Your Honor.  This is
 8   Gregory Copeland from Rapid Defense Network for Mr. Anthony, the
 9   petitioner.
10              THE COURT:  Good afternoon.
11              MS. MC BRIDE:  Good afternoon, Your Honor.  Patricia
12   McBride on behalf of the government.
13              THE COURT:  Good afternoon.
14       I have received the declaration of Erik Weiss.  I have also
15   received Mr. Anthony's filing, which includes the declaration of
16   Gregory Copeland, the declaration of Fabian Chatain, and some
17   other documents.
18       Is there any other factual information either side would
19   like to put before me?
20              MR. COPELAND:  Not from petitioner, Your Honor.
21              MS. MC BRIDE:  Not from the government, Your Honor.
22              THE COURT:  All right.  Any additional argument?
23              MR. COPELAND:  Not at this time, no.
24              MS. MC BRIDE:  Not from the government, Your Honor.
25              THE COURT:  All right.  So before me is Petitioner
```

1    Samuel Jonathan Anthony, Jr.'s motion for preliminary injunction
2    seeking to enjoin Attorney General William Barr, Acting
3    Secretary of the U.S. Department of Homeland Security Kevin
4    McAleenan, and U.S. Department of Homeland Security from
5    deporting him until his application for U Visa is fully
6    adjudicated.
7         On August 12, 2019, Anthony filed a habeas petition and a
8    complaint for declaratory injunctive relief alleging violations
9    of the Fifth Amendment due process clause, the Immigration and
10   Nationality Act, and the Administrative Procedure Act.
11        Most of the facts of this case are not in dispute.
12   Anthony, a citizen of Sierra Leone, was born on July 20th, 1972,
13   and admitted to the United States in 1981.  He was granted
14   lawful permanent residence status on September 3rd, 1989.
15        Since then, he has been convicted of possession with intent
16   to distribute cocaine, conspiracy to distribute 50 or more grams
17   of cocaine base, operating a vehicle under the influence, and
18   unsafe operation of a vehicle.  And as a result, Anthony has
19   served most of his adult life, approximately 17 years, in prison
20   in the United States.
21        When Anthony was released from prison on January 21st,
22   2011, he was taken into ICE custody.  ICE then began procedures
23   to remove him based on his prior aggravated felony conviction.
24   Although the immigration judge in his removal proceedings
25   initially granted him deferral of removal under the Convention

1  Against Torture, on appeal the Board of Immigration Appeals
2  vacated the decision and ordered Anthony removed to Sierra Leone
3  on November 17, 2011.  Anthony filed a petition for review with
4  the Fourth Circuit, but that court later dismissed his petition.
5       On May 17, 2012, ICE released Anthony on an order of
6  supervision because Sierra Leone had refused to issue a travel
7  document necessary for the government to remove him.
8       In 2018, the government resumed its efforts to obtain a
9  travel document for Anthony, and from 2018 to '19, DHS requested
10 various documents from Anthony necessary for his travel
11 documentation.
12      On April 10, 2019, Anthony applied for a U Visa based on a
13 violent assault he endured in 1991.  Separately, according to
14 the government, on April 30, 2019, Anthony was interviewed by
15 the embassy of Sierra Leone to determine whether he was a
16 citizen of Sierra Leone and whether a travel document could be
17 issued.
18      On July 31st, 2019, DHS arrested Anthony and, according to
19 the declaration, served him with a notice of revocation of his
20 order of supervision that day.
21      Anthony has submitted through his counsel declarations that
22 say he initially refused to sign the notice and eventually did
23 so only after he was threatened by the deportation officer.  He
24 also claims he was never provided the rights he was due under
25 the regulations to know the reason for the revocation, to have

an interview, and to submit evidence to support his release. He also contends that the assistant field office director who provided the notice did not have the authority to revoke his status and revocation status was not served on his counsel, as the regulations require.

It is undisputed, however, that on August 12, 2019, Anthony filed a request for an administrative stay, but it was denied, and his removal was scheduled for August 13, 2019. Also on August 12th, Anthony filed his petition and complaint with this court.

Lacking any substantive response by the government on August 12, 2019, I granted Anthony's motion for a temporary restraining order. The government subsequently agreed to a continuation of the temporary restraining order to allow for full briefing on the motion for a preliminary injunction.

I held an initial hearing on the motion on September 6, 2019, and gave both parties an opportunity to provide supplemental declarations and legal authorities. Since then, Anthony has filed supplemental legal authorities and declarations from Anthony's lawyers, Mr. Copeland and Ms. Chatain. The government filed a document it represents as a Notice of Revocation of Release and a declaration from Erik Weiss, the assistant field office director for DHS's Washington office.

All here are familiar with the standards that apply to

1  motion for preliminary injunction.  So I will not state them
2  here.  I will begin by addressing whether I have jurisdiction to
3  hear Anthony's claims challenging his removal.
4      The parties dispute whether Title 8 U.S.C. Section 1252(g)
5  strips this court of jurisdiction to hear Anthony's claims
6  challenging his removal.  This section provides that except as
7  provided in this section and notwithstanding any other provision
8  of law, including Section 2241 of Title 28 or any other habeas
9  corpus provision, no court shall have jurisdiction to hear any
10 cause or claim by or on behalf of any alien arising from the
11 decision or action by the attorney general to commence
12 proceedings, adjudicate cases, or execute removal orders against
13 any alien under this chapter.
14     The Supreme Court has held that this provision only removes
15 jurisdiction for three discrete decisions or actions the
16 attorney general may take:  To commence proceedings, adjudicate
17 cases, or execute removal orders.
18     The decision Anthony challenges here, the government's
19 decision to execute the 2011 removal order before his U Visa
20 application process is complete, I find falls within the plain
21 language of the statute because it arises from a decision or
22 action to execute a removal order against Anthony.
23     This conclusion is in line with Circuit and District Court
24 decisions across the country.  The Sixth Circuit, for example,
25 has held that the government's enforcement of long-standing

1  removal orders resulting from orders of supervision fall
2  squarely under the attorney general's decision to execute
3  removal orders and is not subject to judicial review.  That is
4  *Hamama v. Adducci*, 912 F.3d 869, Sixth Circuit case, 2018.
5       And in *Sadhvani V. Chertoff,* 460 F.Supp.2d 114, a D.D.C.
6  case, the circuit affirmed Judge Bates' decision that he lacked
7  jurisdiction over a claim that executing a removal order while
8  petitioner's motion to reopen removal proceedings is pending
9  violated his constitutional rights.  As Judge Bates stated,
10 whatever label petitioner puts on them, the allegations are
11 quite clearly claims by or on behalf of an alien arising from
12 the decision of the attorney general to execute removal orders
13 against that alien.  And that's 460 F.Supp.2d at 122.
14      Other courts have similarly held.  For example, I will cite
15 a number of cases.  *Delgado v. Quarantillo,* 643 F.3d 52, Second
16 Circuit case from 2011; *Silva v. United States*, 866 F.3d 938,
17 Eighth Circuit, 2017; and in *Nken v. Chertoff*, 559 F.Supp.2d 32,
18 a D.D.C. case from 2008.
19      Consistent with all of these cases, I don't find Anthony's
20 core argument that his claim is collateral to challenging his
21 removal because it centers on the U Visa process compelling
22 because I find his U Visa process claim as inextricably
23 intertwined with his removal order, and the claims -- and claims
24 that challenge the manner in which the government executes the
25 removal order are still subject to the unambiguous

1    jurisdiction-stripping language of Section 1252(g).

2         To support his argument, Anthony relies primarily on
3    *Calderon v. Sessions*, a 2018 Southern District of New York case
4    at 330 F.Supp.3d 934.  But that case is distinguishable.  In
5    *Calderon*, the Court addressed whether ICE violated the rights of
6    a petitioner by removing him while he was in the process of
7    obtaining a provisional waiver, which is a waiver that allows an
8    immigrant applying for an adjustment of status to return to
9    their home country without being subject to a mandated
10   multi-year ban on returning to the United States.  The Court
11   held that it had jurisdiction over the petitioner's allegations
12   because removal would deprive the petitioner of the right to
13   seek access to the provisional waiver process.

14        In contrast here, Anthony's removal is premised on more
15   than a right to seek access to a lawful regulatory process.
16   Indeed, his removal would not block his access to the U Visa
17   process, and Anthony's claim, unlike the petitioner's in
18   *Calderon*, was premised on a right to remain in the United
19   States.

20        Because Anthony seeks to thwart the government's execution
21   of an order of removal, his case falls within Section 1252(g)'s
22   ambit.  And more importantly, unlike *Calderon* and the other
23   cases Anthony cites in which petitioners challenge the
24   government's authority to execute a removal order without
25   allowing a petitioner the chance to participate in the

1   provisional waiver process, Anthony cannot challenge the
2   government's authority to execute the removal order while his
3   U Visa is pending because the regulations themselves expressly
4   permit ICE to execute a removal order while a U Visa is
5   processing.  8 C.F.R. Section 214.14 provides the filing of a
6   petition for a U-1 nonimmigrant status has no effect on ICE's
7   authority to execute a final order, although the alien may file
8   a request for a stay of removal pursuant to 8 C.F.R. 241.6(a)
9   and 8 C.F.R. 1241.6(a).
10       And the regulations contemplate an alternative route for
11  challenging the detention, and that is a route that Anthony has
12  already taken advantage of pursuant to 8 C.F.R. 241.6(a).
13       It is important to note that Section 1252(g) of Title 8
14  does not preclude all federal court review of constitutional
15  claims.  Instead, it provides that no court has jurisdiction
16  over such claims except as otherwise provided in Section 1252.
17  And then Section 1252(b) provides that an alien who wishes to
18  challenge a final order of removal must file a petition for
19  review of such order in the Court of Appeals encompassing the
20  circuit in which the immigration judge completed the
21  proceedings.
22       In *Hamama*, the petitioners, like Anthony, were ordered
23  removed to Iraq years before, but they remained in the U.S.
24  under orders of supervision because Iraq refused to repatriate
25  them.  There, the Sixth Circuit found that the petitioners'

Case 1:19-cv-02441-DLF   Document 31   Filed 09/22/19   Page 10 of 16

10

1  challenge to the final order of removal, which like here
2  included Fifth Amendment and statutory arguments, did not
3  constitute a type of relief appropriate for a habeas claim.  The
4  Court also found that even if the habeas writ covered this type
5  of relief, there was no suspension clause violation, because in
6  Section 1252 Congress provided an adequate substitute to the
7  habeas writ which leaves intact federal appeals courts'
8  jurisdiction to hear these claims.
9       This comports with the D.C. Circuit's long-standing rule
10 that where a statute commits review of agency action to the
11 Court of Appeals, any suit seeking relief that might affect the
12 Circuit Court's future jurisdiction is subject to the exclusive
13 review of the Court of Appeals.  That's the *TRAC* case at 750
14 F.2d 70, D.C. Circuit.
15      Section 1252 also provides a clear statement of
16 congressional intent to repeal habeas jurisdiction.  After
17 *INS v. St. Cyr,* Congress amended Section 1252 to make explicit
18 that the phrase in Section 1252(g) "notwithstanding any other
19 provision of law" included Section 2241 of Title 28 or any other
20 habeas corpus provision.
21      Under 1252, Anthony could file a motion to reopen in the
22 Court of Appeals followed by a petition, and he could raise the
23 same claims that he raises here there.
24      Anthony argues, with the support of declarations from his
25 attorney and a psychologist, that he will be unable to pursue

1   the U Visa process from abroad because of his PTSD from the 1991
2   assault and the immense psychological distress that he will
3   experience if he were returned to Sierra Leone.
4       But the cases he invokes to support his argument involve
5   exceptional circumstances far beyond what Anthony alleges here.
6   In *Sean B.*, the petitioner alleged he would likely be killed if
7   he were removed.  In *Compere v. Nielson*, the petitioner faced
8   prolonged detention and lynching by the Haitian public if his
9   habeas petition was not heard.  In *Ibrahim v. Acosta*, the Court
10  noted the petitioners would likely be forced underground in
11  order to avoid persecution immediately upon arrival.  And
12  finally, in *Devitri v. Cronen*, the petitioners raised a colorful
13  claim of persecution.
14      Anthony has not established that such extraordinary
15  circumstances exist here, and to the extent his mental condition
16  impacts his ability to pursue his U Visa, he can continue to
17  rely on the assistance of counsel and family here in the United
18  States.
19      I also note that Anthony has had many years to pursue a
20  U Visa.  He was a victim of a 1991 assault.  Congress
21  established the U Visa program in 2000.  Anthony was ordered
22  removed from the United States in 2011, but instead of pursuing
23  his U Visa claim in 2000 after the U Visa program was
24  established or in 2011 when Anthony was ordered removed, he
25  waited many years to begin this process.  The record reveals

1   that Anthony did not initiate the U Visa process until April
2   2019, only after he received notice that Sierra Leone was
3   accepting removals and his removal order was likely to be
4   executed.  As in *Hamama*, he cannot convincingly argue that the
5   system gave him too little time to have his claim adjudicated.
6        In sum, because I find that Anthony's likelihood of success
7   on the merits is low and because I lack jurisdiction to hear his
8   claims, I would deny his claims on that basis alone.
9        So although I don't believe I have jurisdiction to consider
10  his claim, to the extent my decision conflicts with the
11  decisions of any other court, it bears mentioning that I also
12  find that Anthony's likelihood of success on the merits is low.
13  Anthony invokes the *Accardi* doctrine to argue that the
14  Immigration and Nationality Act and its applicable regulations
15  do not permit deportation while an individual is engaged in the
16  process of attempting to regularize his immigration status
17  through the U Visa application process.
18       But Anthony has failed to identify a single regulation that
19  DHS has contravened in the U Visa process, and as noted, the
20  regulations explicitly state that the filing of a U Visa has no
21  effect on ICE's authority to execute a final order.  Again, I
22  cite 8 C.F.R. Section 214.14.
23       Anthony can apply for a U Visa abroad.  Although he will
24  not be eligible for the deferred action status abroad, an
25  individual cannot be granted deferred action status until DHS

1  deems him eligible for a U Visa but does not grant the visa
2  solely because of the cap limit.
3      DHS's decision to grant Anthony a U Visa is entirely a
4  discretionary one, and DHS has made no such determination here.
5  Therefore, it is unlikely that Anthony has a protected liberty
6  or property interest in the deferred action status.
7      With respect to Anthony's alleged lack of notice of
8  revocation of his supervision status, it appears from the DHS
9  declarations that he did, in fact, receive notice of his
10 revocation.  As I've stated, however, Anthony claims that he
11 initially refused to sign the notice and did so only after he
12 was threatened by the deportation officer.  As I said, he also
13 claims he was never provided the rights he was due under the
14 regulations to know the reason for the revocation, to have an
15 interview, and to submit evidence to support his release.
16     He also questions whether the assistant field officer
17 director who provided the notice had the authority to revoke his
18 supervision status, and he points out that revocation was not
19 served on his counsel, as regulations require.
20     Regardless of whether Anthony's assertions are true, his
21 due process challenge to the government's failure to follow the
22 regulations that apply to revocation of supervision clearly
23 arises from a decision by the government to execute a removal
24 order.  And for all the reasons I've stated already, I lack
25 jurisdiction to hear this claim.

1     Because Anthony has a low likelihood of success on the
2     merits, it is unnecessary to weigh the likelihood of irreparable
3     harm, but I will address it briefly here.
4          Anthony contends that the irreparable harm would be a
5     depravation of the familial support and healthcare necessary to
6     treat his PTSD and pursue his U Visa.  But this harm may be
7     temporary as he can still apply for his U Visa with the
8     assistance of counsel after his removal, and if the U Visa is
9     granted, Anthony can return to the United States.  He can also
10    mitigate any alleged harm by going to the proper forum, which as
11    I've explained is the Court of Appeals.
12         For all these reasons, I will deny Anthony's motion for
13    preliminary injunction.
14         Ms. McBride, we had talked previously about me imposing an
15    administrative stay in order to give Mr. Anthony a chance to
16    appeal my decision.  I take it the government continues to not
17    object to that approach?
18              MS. MC BRIDE:  Your Honor, you are breaking up.  I
19    don't have my phone on speaker, but what you just said, I
20    couldn't understand.
21              THE COURT:  Were you unable to hear me this whole
22    time?
23              MS. MC BRIDE:  I can hear you now.  When you just said
24    the last part of what you said, you were breaking up every other
25    word.  But when you just said that, I heard you.

1           THE COURT: Okay. So my question was, we previously
2   talked about me granting an administrative stay long enough to
3   give Mr. Anthony a chance to appeal my decision to the Court of
4   Appeals, and the government had expressed -- you had expressed
5   previously no objection to that approach.
6      Does that remain the case?
7           MS. MC BRIDE: Your Honor, we indicated we do not
8   oppose that until Friday, this Friday, the 13th.
9           THE COURT: All right. I will grant an administrative
10  stay until Friday, the 13th.
11     Mr. Copeland, I assume that gives you adequate time to
12  appeal my decision and request a stay from the D.C. Circuit?
13          MR. COPELAND: I mean, initially, we had said Friday
14  when we were going to do this yesterday, but I will make sure
15  that I get it done by Friday.
16          THE COURT: All right. I assume that if you ask the
17  D.C. Circuit for a stay, that they would grant that, to the
18  extent they're going to consider the claim.
19          MR. COPELAND: Thank you.
20          THE COURT: All right. Anything else we need to
21  address here?
22          MS. MC BRIDE: No, Your Honor.
23          MR. COPELAND: Thank you, Your Honor.
24          THE COURT: All right. Thank you very much.
25     (Proceedings adjourned at 3:25 p.m.)

```
 1                CERTIFICATE OF OFFICIAL COURT REPORTER
 2
 3           I, Sara A. Wick, certify that the foregoing is a
 4   correct transcript from the record of proceedings in the
 5   above-entitled matter.
 6
 7
 8
 9   /s/ Sara A. Wick                    September 18, 2019
10   SIGNATURE OF COURT REPORTER         DATE
```